The next case on our calendar is Dyshell Lucas v. Nancy Berryhill. Good morning. Good morning, your honors. You may proceed. May it please the court. My name is Carolyn Kubitschek and I represent the appellant Dyshell Lucas who seeks disability benefits because her right leg has been amputated three times and she continues to suffer pain and swelling at the stump of her leg, pain that is often so severe that she cannot put on her prosthesis at all and is relegated to crawling on her hands and knees. And even when she is able to wear the prosthesis, it is undisputed that she can walk for only four minutes before she stops to rest and that the pain in her stump, exacerbated by her obesity, interferes with her ability to concentrate. Do you argue below that this is not effective ambulation, four minutes? Your honor, we did not argue or Ms. Lucas did not argue below that her condition meets a listing and she did argue below that she has problems walking. With regard to whether or not she waived the argument that her condition meets a listing, in fact the district court reached the issue even though Ms. Lucas herself did not raise it and that gives this court the power to reach that same issue. Now, the commissioner agrees that Ms. Lucas has no past relevant work under Social Security's definition of work and therefore the burden shifts to the commissioner to demonstrate that there are jobs which Ms. Lucas could do given her age, past work experience and her mental and physical limitations. The commissioner failed to sustain that burden because the administrative law judge asked flawed questions of the vocational witness, questions which did not take into account all of Ms. Lucas's limitations, specifically Ms. Lucas's interference problems with concentration. Those problems, are they reflected in the medical record or through her testimony? The problems are reflected, the problems are identified and documented by the commissioner's own physician, Dr. Ryan, who examined Ms. Lucas. She reported those problems? They are, well, they are problems not only reported but observed by him and observed by the administrative law judge who concluded in part because Ms. Lucas had to stop and take a break during the administrative hearing because she was in such pain that she couldn't answer questions, the administrative law judge found as a fact that she had difficulties in concentration. Having made that finding, this court has already ruled that the administrative law judge is required to incorporate those limitations in the hypothetical question that the judge asks the vocational witness. What did the ALJ leave out in the hypothetical question? Left out two things, Your Honor. Number one, problems with concentration, which is the most significant one. And secondly, problems with reaching, which the, again, the doctor who examined Ms. Lucas at the request of the commissioner found as an issue because she suffers from tendinitis in her right shoulder. But it's the concentration problem that was clearly an issue because the two jobs which the vocational witness identified that Ms. Lucas could supposedly perform, surveillance systems monitor and food order clerk, both require enormous amounts of concentration. And had the ALJ included concentration problems or Ms. Lucas' concentration problems in the questioning to the vocational? Counsel, I have a question. I didn't mean to cut you off in the middle of a word. This petitioner's condition changed dramatically between October 2011 and March 12th. And because of that, the ALJ didn't grant her testimony all the credibility that it might have been entitled to. Can you explain without any reason why her condition deteriorated so rapidly between those two dates? Your Honor, the medical evidence does not show why her condition deteriorated. Ms. Lucas agrees that her condition did deteriorate between those two dates, although she wouldn't say it was so rapidly. During that time, she was working at or attempting to work at JCPenney. And because of the problems with her leg and the stump of her leg, JCPenney first reduced her hours from five days a week to four, then from eight hours a day to six hours a day, and then tolerated her coming in only two days a week and taking breaks whenever she needed them to sit down and rest, and finally laid her off entirely because it was clear that she wasn't performing the job. But before that, she described her life where she took care of her own personal grooming needs, bathed herself, traveled? Well, Your Honor, her only traveling was in June 2010. That was well before the date she even applied for benefits. Her condition really began going downhill in 2011, and her experience at JCPenney reflects that she became her pain increased and increased and increased, and the swelling in the stump of her right leg is very well documented, and she ended up in subsidized housing for the disabled. But during the entire time period, when she was working from 2010 until she was laid off in 2012, she had a lot of help. Her father came up from the south to take care of her. Her grandmother lived with her and took care of her, and then when she moved into housing for the disabled, her friends came by every day. A neighbor checked in on her. Her friend James Rogers did the shopping for her, and she had, even when she was working, somebody drove her to work because she can't drive a car unless it would be changed to reflect the needs of somebody who has only one leg. With respect to the pain reports, I have no doubt it seems very plausible that she would suffer pain, but the records seem a little inconsistent on that score in that in July 2012, her prosthetist noted she had no complaint about her prosthesis and could ambulate without discomfort, and she testified that she'd walked to the hearing and that also there were reports that she did not always cooperate with the prescribed treatment, for example, that she didn't follow advice about how to shower with regard to having removed her prosthesis initially and so on. What are we to make of those kind of countervening pieces of evidence in the record? Well, Judge Carney, with regard to walking, she walked to the hearing, which was two and a half blocks. It took her 25 minutes. She was accompanied by a friend, and she had to stop every five or six paces, she said. And we submit that under the commissioner's rules, that's not effective ambulation. The prosthesis report showed that occasionally she seemed to be okay. But there were many other times when she was just having great difficulty with the prosthesis. It required she had swelling in the right leg, and whenever the stump of her leg swelled up, she couldn't wear the prosthesis. There were incidents when the business about showering or not showering, and it seemed as though she wasn't always meticulous about following the advice she was given to minimize the pain and discomfort that she was suffering. Well, she didn't always take her pain medication, or didn't take all of the pain medication, because she said it made her drowsy. I'm not talking about pain medication. I'm talking about prosthesis care, I guess. Okay. The prosthesis care, there was at least one time, yes, when the prosthetist said the prosthesis wasn't well cared for. But the judge did not, the administrative law judge did not make a finding that if Ms. Lucas had followed every single instruction of every single treating person to the letter, that she would have been able to work. So the, and this court obviously cannot be asked to affirm for reasons that the commissioner did not give. That's basic Chenery doctrine. So the ALJ himself found the limitations that he found were limitations that Ms. Lucas suffered, irrespective of whether or not she was absolutely complying at every single time. And there seemed to have been one or two times when she could have been more compliant. But the large picture, I'm sorry? The prosthesis to the shower, which damaged the prosthesis. Well, yes, Your Honor, but that doesn't interfere with her ability to work. It means she needed a new prosthesis, which she got, and then apparently there were not problems with the prosthesis thereafter. But there were still problems with Ms. Lucas's ability to walk and to function as a regular person. All right. Well, you've reserved two minutes for rebuttal. Thank you. Thank you, Your Honor. We'll hear from the government. May it please the court. Name is Vernon Norwood. I'll be representing the appellee commissioner of social security. First of all, Lucas waived any contention that her condition met listing 105 B because she failed to argue at any of the prior levels of review. What is that section? Ambulate effectively? Is that what we're talking about? Yes, that's what we're talking about. She didn't argue it at the . . . Sir, could you step a little closer to the microphone or adjust it so we can hear you a little better? Thanks. Okay. She didn't argue it at the ALJ level. She didn't bring it up to the appeals council. And more importantly, she didn't even raise it at the district court. But as opposing counsel said, the judge dealt with it. Well, the judge did state that she didn't meet the listing. But the court here has determined that when a claimant is specifically represented by counsel at the district court level, in order to preserve the argument for the circuit court, she has to make the specific argument. And that's not what happened here. She didn't bring it up at all. She's basically saying that the district court mentioned it in the decision, so it should be preserved. But we feel that it's not preserved because she never brought it up to the commissioner at any three prior stages of review. I assume for the sake of this question that it was preserved. Okay. Do you think she was ambulating effectively? Oh, yes. And there's absolutely evidence of the record, substantial evidence of record that shows that she was ambulating effectively. But she could only walk four minutes without stopping. Right. Right. Tell me why that's effective ambulation. Well, what happens in these cases is the ALJ has to rely on the opinions of medical experts. In this case, he had two state agency medical consultants, both of whom specifically assess that Lucas did not meet listing 1.05B because she could ambulate effectively. And, of course, the state agency- What does that mean? If she can't walk for more than four minutes at a time, how could that be effective ambulation? Well, the commissioner's regulations defined effective ambulation as being able to walk well enough to complete your activities of daily living and being able to walk well enough to commute to and from work. And that's the definition that the state agency medical consultants apply when they're reviewing the medical evidence. So, in other words, the state agency medical consultants reviewed all of her records, and they determined that she could walk well enough to complete her activities of daily living and that she could walk well enough to commute to and from work. And, as I said, those guys are experts in Social Security disability evaluations, and the ALJ is entitled to rely on their opinions. But the hypothetical did not include effective ambulation. Isn't that true? The hypothetical asked of the vocational expert did not include whether she effectively ambulated. The hypothetical to the vocational expert limited her to walking four minutes at a time, and that was the limitation. It doesn't require ambulation, did it? No, it doesn't require more than what the ALJ did. Okay. All right. There's also other evidence of record that shows that she could ambulate effectively, mainly her own statements. Ms. Lucas told Dr. Ryan, a consultative physician, that she handled all of her activities of daily living by herself. She made the same statement to Dr. Lago, a consultative psychologist, again stating that she could handle all of her activities of daily living on her own. When was that? That was in September and October of 2011. Now, around that same time, she also completed an activities of daily living questionnaire, and on that she also indicated that she completed a wide range of activities of daily living on her own. Moreover, there's the observations of her treating sources, in this case Mr. Knapp and Mr. Kirsch, her prosthetists. For instance, Mr. Knapp observed that Lucas' gait was smooth, and that she walked about his office some 200 feet, and she didn't complain of any pain. Mr. Kirsch, another prosthetist, noted that Lucas was a wholly independent ambulator, and that she could care for herself, and that she was able to cross varying terrains. He even went on to assess that she should be able to walk one or two miles a day, clean, cook, care for her house. So basically, the commissioner's position is that the state agency medical consultants got it right when they determined that she could effectively ambulate, and of course the ALJ is entitled to rely on their opinion. The ALJ found it hard to believe Ms. Lucas because her condition deteriorated so rapidly between October 2011, as you described, and March 2012. Do you have anything to say about that? Well, yes. There was just no medical evidence to support her contention that her condition deteriorated as rapidly as it did. As I said, Mr. Kirsch, who treated her over a long period of time, in June 2012 is when he said that she was a wholly independent ambulator who could care for herself and cross varying terrains. He's the one that says that she could walk one or two miles. He went as far as to say that she could go dancing, work in retail. So apparently, what he's observing isn't consistent with what Ms. Lucas is saying. We also have Ms. Lucas' statement as late as November 2012, I believe she was at Yale New Haven Hospital. And she told the doctor there that she felt normal and fine. There was not any pain. And that doctor observed that she was walking and exhibited no swelling in her stump. So basically, it came down to credibility. She was alleging that her condition got a lot worse, but when we looked at the evidence of records, specifically her medical sources, it just wasn't confirmed by any of the- Do you believe that Ms. Lucas will ever work again? Yes, I do. At step five, Lucas waived any contention that the ALJ's hypothetical questions to the VE was flawed, because again, she didn't bring that up at any of the prior levels of review, even though she was represented by counsel at each of those levels. So that should be waived. But setting this waiver issue aside, Lucas' challenge to the hypothetical question for not having any limitations in reaching is just unpersuasive, because she hasn't shown any limitations in reaching. She has shoulder pain that she reported consistently. Well, you say she reported consistently, but we gave her a form in which we asked her to specify which of her abilities were affected by her condition. And on that form, she checked boxes for standing, walking, lifting, carrying. And there was a box right next to them for reaching, and she didn't check that box at all, which is a strong indication that she didn't feel she had any limitations in reaching. Also, when she completed her disability application, she listed several impairments as the reason why she couldn't work, and she didn't list any impairment that had anything to do with her shoulder condition. Moreover, at the ALJ hearing, she had the opportunity to question the vocational expert, and even though she did question him about certain limitations, she did not mention anything about a reaching limitation. It seems that the only evidence of records she had to support any sort of reaching limitation is that she went to Dr. Ryan for a consultative examination, and during the course of that examination, he asked her to raise her arm. When she did so, she complained of pain. So Dr. Ryan said, sounds like mild case of shoulder tendinitis. But he then went on to say that she completed the whole full range of motion. And more importantly, when he was assessing her limitations, he assessed limitations in standing, walking, lifting, carrying. He didn't assess any limitations in reaching, so apparently he didn't feel she had any limitations in reaching either. So basically, as far as her reaching limitations is concerned, she just failed to show that she had any. So the ALJ was correct not to include those in the hypothetical questions to the vocational expert. Could you address the question about the potential mismatch on level of reasoning between the ALJ's limitation to simple, routine, repetitive tasks and the GED level of 3 for the identified occupations? Well, yes. The DOT defines reasoning level 3 as being able to apply common sense to written and oral instructions, and Ms. Lucas is a high school graduate. In diagrammatic form, I mean, it presupposes a certain level of abstract reasoning. Right. What do we have in the record to demonstrate that she could perform those tasks? Well, we just have her statements that she said she had no problems understanding written and spoken instructions. She said she had no difficulties with concentration. She said she had no problems finishing what she started. And as I said before, none of the people who examined her found any limitations in her cognitive abilities. It just seems completely reasonable that she should be able to apply common sense. But didn't the ALJ say that she should be limited to simple, routine, repetitive tasks? And doesn't that typically correspond to level 2? Well, no. This Court actually has found that level 3 reasoning is consistent with the ability to do simple, repetitive, routine tasks. I believe it was a Connecticut case, actually. Jones-Reed, where the Connecticut Court felt that the limitation to simple, routine work was consistent with the ability to do reasoning level 3 work. And then on appeal, this Court affirmed the District Court of Connecticut's decision that reasoning level 3 was consistent with short, simple instructions. And her high school diploma and her previous job history establishes that she could handle level 3. And the fact that she, after high school, she went on and earned a certificate in business administration. She went to college for a few years after high school. Thank you. I see my time is up. If there are any further questions? Thank you. Ms. Mack, you have reserved two minutes for rebuttal. Thank you, Your Honor. A few things that need correction. The . . . Ms. Lucas absolutely did raise in the District Court the fact that the questioning to the vocational expert was flawed. While she didn't use the terms effective ambulation in the District Court, the rules of this Court don't require such identity between what you argue in . . . As long as you raise the issue in the District Court . . . How did she couch it? She couched it in that the . . . She argued that the questioning to the vocational expert was flawed. A moment. Your Honor. Oh, look. Don't worry about it. Okay. So, she raised the specific issue. She did not raise every single argument or claim in support of the issue that she's raising now. But there's no rule that the brief that a plaintiff submits to . . . or that an appellant submits to this Court needs to be word-for-word identical to the brief that was submitted in the District Court . . . as long as the issue itself was raised and the issue was very much raised and it was . . . I don't think the Commissioner disputes that the issue itself was raised. Now, with regard to the Commissioner's statements and oral argument that the ALJ . . . could have relied upon the prosthetist to find that Ms. Lucas could have ambulate effectively . . . The fact is the ALJ did not rely upon the prosthetist. The statements that were just read were aspirations that Ms. Lucas with a proper prosthetic and no stump swelling . . . should be able to walk a mile or two every day. It doesn't mean that she actually could walk a mile or two every day. And the ALJ, quite reasonably, didn't rely on the prosthetist's hopes of what might happen if . . . which were really aspirational and stated as aspirational rather than what she was currently able to do. In conclusion? In conclusion, we would ask that this Court reverse and remand for a new hearing . . . where the ALJ is directed to ask the vocational expert questions which reflect all of the limitations . . . which the ALJ himself or herself finds regarding Ms. Lucas. And, secondly, that the ALJ explicitly consider whether or not Ms. Lucas' ability to . . . or limitation in walking to only four minutes is effective ambulation under the regulations promulgated by the Commissioner. And, we've cited to the four appellate and district court opinions which says it's not. That effective ambulation must include a durational component as well as a component of being able to walk unaided. Thank you. Thank you. Thank you both. We'll reserve decision.